NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0187n.06

No. 08-3872

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Mar 25, 2010
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | C O U R T   F O R   T H E |
| v. | ) | SOUTHERN DISTRICT OF |
| | ) | OHIO |
| ABDULLAH MANSUR, | ) | |
| | ) | O P I N I O N |
| Defendant-Appellant. | ) | |

BEFORE:    CLAY, and McKEAGUE, Circuit Judges; and POLSTER, District Judge.[*]

**McKEAGUE, Circuit Judge**.  Appellant Abdullah Mansur argues that the district court: (1) should have suppressed the evidence of his possession of a firearm because the firearm was seized in violation of the Fourth Amendment; and (2) erred in giving him an enhanced sentence under the Armed Career Criminal Act.  Because the officer did not violate the Fourth Amendment when he seized the firearm, and because attempted robbery is a violent felony for purposes of 18 U.S.C. § 924(e), we **AFFIRM** the district court's decision denying Mansur's motion to suppress and **AFFIRM** Mansur's sentence.

## I.  BACKGROUND

_____

[*]The Honorable Dan A. Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

On July 8, 2007 around 10:40 p.m., Springfield Township Officers Jeremy Trentman and Rami Khayo were on patrol in the area of Winton and North Bend Roads in Springfield Township, Ohio in a neighborhood that they described as a high-crime area. That intersection had a number of businesses operating twenty-four hours and was very busy, even at night. The officers pulled into the parking lot of a United Dairy Farmers gas station. While there, the officers observed a full-sized, dark-colored van with a license plate in the back window, instead of in the normal position. Concerned because, in his experience, tags displayed in this way were often stolen or not supposed to be on the vehicle displaying them, Officer Trentman processed the license number with the Mobile Data Computer in his patrol car. The Mobile Data Computer showed that, while the license tag had not been reported stolen, the license tag was registered to a Dodge Neon rather than a van, and this led Officer Trentman to believe that the van might be operating with a fictitious tag, in violation of Ohio law.

After checking the license tag, the officers continued to observe the van from their patrol car, which was parked about twenty to twenty-five feet away from the van. They were waiting for it to enter one of the roadways, where they intended to stop it. The officers watched Mansur – the only person around the van – pumping gas, opening and closing doors, and cleaning all the windows of the van. Mansur kept looking at the cruiser and eventually, "[i]t was very obvious that Mr. Mansur was focusing his attention solely on [the officers] in the cruiser" and that he was not pumping gas. (R. 41 TR 15.) When it seemed that the van was not going to leave the gas station, the officers decided to execute a traffic stop while the van was still parked at the pump. The officers pulled up behind the van in their patrol car and activated the patrol car's overhead lights. Officer Trentman

got out of the patrol car, and walked up to Mansur, who was at the rear driver's side of the van. Officer Trentman questioned Mansur regarding the license plate, and Mansur told Officer Trentman that the license plate was stolen, and that he purchased the tag from a "crackhead" for $20.00. (R. 41 TR 17.) Officer Trentman stated in his deposition that, after Mansur's voluntary admission, he intended to arrest Mansur for felony possession of a stolen license plate.

Officer Trentman than took Mansur's driver's license and gave it to Officer Khayo to run through the computer unit in the police car. Officer Khayo checked the license and found that Mansur had a criminal history. He conveyed this information to Officer Trentman. At this point, Officer Trentman searched Mansur. During the search, Officer Trentman found a firearm in the back pocket of Mansur's pants.

Mansur was indicted for one count of being a felon in possession of a firearm pursuant to 18 U.S.C. §§ 922(g) and 924(e), and one count of possessing a firearm with an obliterated serial number pursuant to 18 U.S.C. § 922(k). Mansur filed a motion to suppress, which the district court granted-in-part and denied-in-part (critically, the district court did not suppress the firearm). Mansur subsequently entered into a conditional plea agreement with the government, in which he pled guilty to being a felon in possession of a firearm but reserved his right to appeal the district court's ruling on his motion to suppress and his right to contest whether he qualified as an armed career criminal under 18 U.S.C. § 924(e). After conducting two sentencing hearings, the district court determined that, based on his prior felonies, Mansur qualified for an enhancement under the Armed Career Criminal Act and sentenced Mansur to: (1) 180 months of imprisonment; (2) three years of supervised release; and (3) a special assessment of $100.00.

## II. ANALYSIS

In his appeal, Mansur argues that (1) the seizure of the firearm violated the Fourth Amendment and (2) the district court incorrectly determined that his prior felonies required that he receive an enhanced sentence under 18 U.S.C. § 924(e).

### A. *The Seizure of the Firearm*

On appeal from the denial of a motion to suppress, this court reviews the district court's findings of fact for clear error and its conclusions of law de novo. *United States v. Caruthers*, 458 F.3d 459, 464 (6th Cir. 2006). "A factual finding will only be clearly erroneous when, although there may be evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Nichols*, 512 F.3d 789, 793 (6th Cir. 2008) (citation omitted). This court accords "deference to the district court's assessment of credibility inasmuch as the court was in the best position to make such a determination." *United States v. Garrido*, 467 F.3d 971, 977 (6th Cir. 2006) (citation omitted). "The evidence must be considered in the light most favorable to the party that prevailed in the court below – in this case, the government." *Id.*

This court has held that, "so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resultant stop is not unlawful and does not violate the Fourth Amendment." *United States v. Davis*, 430 F.3d 345, 352 (6th Cir. 2005) (citing *United States v. Bradshaw*, 102 F.3d 204, 210 (6th Cir. 1996)). In determining whether probable cause existed, the courts "employ a totality of the circumstances test." *United States v. Torres-Ramos*, 536 F.3d 542, 555 (6th Cir. 2008). The officers must have "a reasonable ground for belief of guilt" and that

"belief of guilt must be particularized with respect to the person to be searched or seized." *United States v. Romero*, 452 F.3d 610, 615-16 (6th Cir. 2006) (citations omitted). In making this determination, this court takes into account, "the 'factual and practical considerations of everyday life' that would lead a reasonable person to determine that there is a reasonable probability that illegality has occurred or is about to occur." *Id.* at 616 (citation omitted). Probable cause requires that the officers have more than a "mere suspicion" but does not require that they "establish a prima facie case at trial, much less evidence to establish guilt beyond a reasonable doubt." *Torres-Ramos*, 536 U.S. at 555 (citation omitted). If the stop was proper, then this court next asks "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Gross*, 550 F.3d 578, 582-83 (6th Cir. 2008) (citations omitted).

Looking at the totality of the circumstances, the officers had probable cause to initiate the traffic stop.[2] When the officers ran the license plate number displayed in the van's rear window through the computer in their patrol car, they discovered that the license plate was registered to a different car.[3] This gave the officers particularized, reasonable grounds for believing that the van was displaying an unauthorized plate in violation of OHIO REV. CODE ANN. § 4549.08.[5]

---

[2]When Officers Trentman and Khayo pulled up behind the van and turned on their lights, Mansur, who submitted to their show of authority, was seized. *See Brendlin v. California*, 551 U.S. 249, 254 (2007).

[3]The officers use of the information on Mansur's license plate did not violate the Fourth Amendment. *United States v. Ellison*, 462 F.3d 557, 564 (6th Cir. 2006).

[5]The officers had probable cause even though there was a possible legal explanation for the license plate not matching with the vehicle description. *See* OHIO REV. CODE ANN. § 4549.08(A)(3). Logically, the strong possibility that the license plate was unauthorized existed and gave the officers probable cause to initiate a traffic stop. Regarding unauthorized plates, OHIO REV. CODE ANN. §

Furthermore, the van was parked in the gas station at a United Dairy Farmers. This gave the officers

particularized, reasonable grounds to believe that the van had recently been driven on the nearby

roads while displaying an unauthorized license plate. The officers observed Mansur pumping gas,

opening and closing the doors to the van, staring at the police cruiser, and cleaning the windows of

the van. Mansur was the only person that the officers observed near the van. This gave them

particularized, reasonable grounds to believe that Mansur was the person that had recently driven

the van.[6] To have probable cause, the officers did not need to be absolutely certain that illegality had

occurred, they only needed to have reasonable ground for a belief of guilt, after considering the

factual and practical considerations of everyday life. Since these facts would have led a reasonable

---

4549.08 states that:

> No person shall operate or drive a motor vehicle upon the public roads and highways
> in this state if it displays a license plate or a distinctive number or identification mark
> that meets any of the following criteria:
>
> (1) Is fictitious . . .
>
> (3) Belongs to another motor vehicle, provided that this section does not apply to a
> motor vehicle that is operated on the public roads and highways in this state when the
> motor vehicle displays license plates that originally were issued for a motor vehicle
> that previously was owned by the same person who owns the motor vehicle that is
> operated on the public roads and highways in this state, during the thirty-day period
> described in division (A)(4) of section 4503.12 of the Revised Code. . . .
>
> (C) Whoever violates division (A)(1), (2), or (3) of this section is guilty of operating
> a motor vehicle bearing an invalid license plate or identification mark, a
> misdemeanor of the fourth degree on a first offense and a misdemeanor of the third
> degree on each subsequent offense.

[6] This conduct, which the officers observed, was sufficient to give them probable cause even
if they only observed it over a few minutes.

person to determine that there was a reasonable probability that illegality had occurred, the officers had probable cause to initiate the traffic stop.

Turning to the second inquiry, the traffic stop here was reasonably related in scope to the circumstances which justified it. The officers were not required to wait for Mansur to pull onto a public roadway before initiating their traffic stop. Instead, they quickly pulled up behind Mansur, activated the lights on their patrol car, and Officer Trentman approached Mansur and questioned him regarding the license plate. Mansur told Officer Trentman that the license plate was stolen.[7] Officer Trentman took Mansur's driver's license and gave it to Officer Khayo to run through the computer unit in the police car. It showed that Mansur had a criminal history. Officer Trentman then decided to pat Mansur down, discovered a gun, and placed Mansur under custodial arrest. Throughout this encounter, the degree of the officers' intrusion was reasonable. Therefore, there was no violation of the Fourth Amendment.

The officers were justified in making the traffic stop because they had probable cause to suspect that Mansur had committed the traffic offense of driving with unauthorized plates. The

---

[7] Officer Trentman's search of Mansur was justified as a search incident to an arrest. *See United States v. Montgomery*, 377 F.3d 582, 586 (6th Cir. 2004) (noting that under *Rawlings v. Kentucky*, 448 U.S. 98, 110-11 (1980), "the search-incident-to-a-lawful-arrest rule . . . permits an officer to conduct a full search of an arrestee's person *before* he is placed under lawful custodial arrest as long as 'the formal arrest follow[s] quickly on the heels of the challenged search . . . and the fruits of that search are not necessary to sustain probable cause to arrest him'" (internal citation and quotation marks omitted; emphasis in original)). In Ohio, an officer can arrest an individual without a warrant if he has probable cause to believe he has committed a felony. *State v. Elmore*, 111 Ohio St. 3d 515, 558 (Ohio 2006). In Ohio, receipt of a stolen license plate is a felony. *See* OHIO REV. CODE ANN. §§ 2913.51(A)-(C), 2913.71(C). Therefore, once Mansur told Officer Trentman that he had received a stolen license plate (shortly after the traffic stop began), Officer Trentman had probable cause to arrest him.

search of Mansur's person that disclosed the firearm was justified because, after Mansur told Officer

Trentman that the plates were stolen, Officer Trentman had probable cause to arrest Mansur.

Therefore, we find that Mansur's Fourth Amendment rights were not violated.

### B. The Armed Career Criminal Act Determination

Mansur received an enhanced sentence under the Armed Career Criminal Act, 18 U.S.C. §

924(e). The Armed Career Criminal Act requires an enhanced prison term for a defendant who is

(1) convicted of being a felon in possession of a firearm, and (2) has "three previous convictions by

any court . . . for a violent felony or a serious drug offense, or both, committed on occasions different

from one another." 18 U.S.C. § 924(e)(1). Mansur argues that his prior convictions for attempted

robbery and escape are not violent felonies and, therefore, that his enhanced sentence under 18

U.S.C. § 924(e) was not required.

We review de novo the legal question of whether a prior conviction constitutes a crime of

violence under the Armed Career Criminal Act. *United States v. LaCasse*, 567 F.3d 763, 765 (6th

Cir. 2009). A crime of violence includes "any crime punishable by imprisonment for a term

exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical

force against the person of another"; (2) "is burglary, arson, or extortion, [or] involves use of

explosives"; or (3) "otherwise involves conduct that presents a serious potential risk of physical

injury to another." 18 U.S.C. § 924(e)(2)(B). We have described the third prong as the "residual

clause." *United States v. Young*, 580 F.3d 373, 377 (6th Cir. 2009).

In making this determination, this court initially takes a "categorical approach" and examines

the offense "in terms of how the law defines the offense and not in terms of how an individual

offender might have committed it on a particular occasion." *Begay v. United States*, 128 S.Ct. 1581, 1584 (2008); *see also Young*, 580 F.3d at 377 (noting that the "categorical approach," means that this court examines only "whether the elements of the offense are of the type that would justify its inclusion within the residual provision" (citation omitted)). However, if the statutory language is not determinative, then we may look to the charging instrument, written plea agreements, plea colloquies, explicit factual findings by the trial judge, or some comparable judicial records in determining whether the underlying felony is a violent felony. *See Shepard v. United States*, 544 U.S. 13, 20-21 (2005); *see also United States v. Goodman*, 519 F.3d 310, 316-17 (6th Cir. 2008).

Mansur argues that his prior conviction for attempted robbery does not qualify as a crime of violence and, consequently, that his enhanced sentence under 18 U.S.C. § 924(e) was improper. However, because Mansur's armed robbery conviction qualifies as a violent felony under the first and third (residual clause) prongs of 18 U.S.C. § 924(e)(2)(B), it is a violent felony and the district court's determination was proper.[8]

---

[8] Mansur argues in a pro se letter that the Supreme Court's recent decision in *Chambers v. United States*, 129 S.Ct. 687 (2009), undermines the finding that his escape conviction was a violent felony. Initially, this claim was not addressed in Mansur's brief before this court and, consequently, it has not been properly presented to this court. However, we note that, even after *Chambers*, a traditional escape from custody, as opposed to a walkaway or a failure to report situation, is still a violent felony for purposes of the Armed Career Criminal Act. *See Chambers*, 129 S.Ct. at 691; *United States v. Ford*, 560 F.3d 420 (6th Cir. 2009). At the time of Mansur's conviction, Ohio law allowed for a conviction either for an escape from custody or for a walk away. *See* OHIO REV. CODE ANN. § 2921.34(A). Mansur conceded that he was in physical custody at the time of his escape conviction; indeed, his letter and his testimony before the district court as to what happened confirm that his escape conviction involved a traditional escape from physical custody and, therefore, that he did not simply walk away. (*See* R. 43 TR 22-23; R. 40 TR 21.) As a result, under the categorical approach, Mansur's escape conviction is a violent felony.

Under Ohio law, as it existed in 1988 when Mansur pled guilty to attempted robbery, OHIO REV. CODE ANN. § 2911.02 defined the crime of "Robbery": "No person in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after such attempt or offense, shall use or threaten the immediate use of force against another." Similarly, OHIO REV. CODE ANN. § 2923.02 defined the crime of "Attempt": "(A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct which, if successful, would constitute or result in the offense." A "criminal attempt" occurs when "one purposely does or omits to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." *State v. Woods*, 48 Ohio St. 2d 127, 127 (1976).

Looking at the language of the statute, attempted robbery has as an element the use, attempted use, or threatened use of physical force against the person of another and, therefore, it is a violent felony as defined under the first prong of 18 U.S.C. § 924(e)(2)(B)(i). *See generally United States v. Sanders*, 470 F.3d 616, 622 n.1 (6th Cir. 2006); *United States v. Thomas*, 13 F. App'x 233, at *8 (6th Cir. April 3, 2001). The crime of robbery requires as an element that the person shall use or threaten the immediate use of force against another. The applicable 1988 provision of the Ohio Revised Code defined "force" to mean, "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." OHIO REV. CODE ANN. § 2901.01.[9] Therefore, the

---

[9]Mansur cites to the Supreme Court's recent decision in *Johnson v. United States*, 130 S.Ct. 1265 (2010), which defined physical force for purposes of the first prong of 18 U.S.C. § 924(e)(2)(B): "the phrase 'physical force' means *violent* force – that is, force capable of causing physical pain or injury to another person." *Id.* at __ (noting that the battery offense that it was examining, which had as an element, "'[a]ctually and intentionally touch[ing]' another person," did

crime of robbery clearly has as an element the use, attempted use, or threatened use of physical force

against another person. Similarly, the crime of attempted robbery also has as an element of the

offense the use, attempted use, or threatened use of physical force against another person.[10]

---

not have physical force as an element for purposes of the first prong of 18 U.S.C. § 924(e)(2)(B)) (emphasis in original). We believe that *Johnson* supports our finding that attempted robbery is a crime of violence. Initially, *Johnson* did not address the residual prong of 18 U.S.C. § 924(e)(2)(B)(ii), which we find that Mansur's attempted robbery conviction also qualifies as a crime of violence under. Furthermore, there is a significant difference between the activity necessary to commit a battery and the activity necessary to commit a robbery (or even to attempt a robbery). Finally, at the time of Mansur's conviction, Ohio courts had already noted that the "type of force" envisioned by the force prong of the Ohio robbery statute was "'that which poses actual or potential harm to a person.' *State v. Carter*, 504 N.E.2d 469, 470 (Ohio App. 9th Dist. 1985). *State v. Ballard*, 469 N.E.2d 1334, 1335 (Ohio App. 8th Dist. 1984)." *State v. Furlow*, 608 N.E.2d 1112, 1113 (Ohio App. 2d Dist. 1994) (noting that "[i]n our judgment, these courts, guided by the Committee Comment to R.C. 2911.02, have properly determined that the difference between theft and robbery is an element of actual or potential harm to persons"); *see also State v. Cohen*, 396 N.E.2d 235, 236 (Ohio App. 1st Dist. 1978) (noting that the "force" defined in the robbery statute meant the "threat of actual or potential harm"); BALDWIN'S OHIO PRAC. CRIM. LAW § 102:3 (2009). Force which involves actual or potential harm to a person is force capable of causing physical pain or injury to another person; therefore, the type of force that was an element of the Ohio attempted robbery statute that Mansur was convicted under is physical force as that term is defined for purposes of the first prong of 18 U.S.C. § 924(e)(2)(B).

[10] Mansur cites to an Ohio case finding that robbery cannot serve as the predicate crime to a charge of attempt. *See e.g.*, *State v. Still*, No. 93-L-195, 1994 WL 721792 (Ohio Ct. App. Dec. 9, 1994). However, this case was decided after Mansur's conviction and other Ohio courts have held to the contrary. *State v. Chaney*, No. H-95-20, 1996 WL 143621, at *1 (Ohio Ct. App. Mar. 8, 1996); *State v. Mramor*, No. 50976, 1986 WL 11516, at *2 (Ohio Ct. App. Oct. 2, 1986). Mansur does not dispute before this court the validity of his prior attempted robbery conviction. *See generally United States v. Goodman*, 519 F.3d at 318-19 (citing *Custis v. United States*, 511 U.S. 485 (1994)). However, building off *Still*, Mansur does argue that attempted robbery, under Ohio law, is really an attempt at an attempt since the Ohio robbery statute incorporates an attempt. *See* OHIO REV. CODE ANN. § 2911.02 ("No person in attempting or committing a theft offense . . . ."). He then argues that this attempt at an attempt is too attenuated to be the "use, attempted use, or threatened use of force." This is incorrect. The Ohio robbery statute clearly prohibits the use or threat of force *while* attempting, committing, or fleeing immediately after a theft offense. Thus, attempt in the robbery statute modifies theft, not the use or threat of force. Furthermore, even under Mansur's reading, a person must at some point attempt to use or threaten force in order to be

Furthermore, Mansur's conviction for attempted robbery also involved conduct that falls under the residual clause of 18 U.S.C. § 924(e)(2)(B)(ii) and, therefore, is a violent felony. To be a violent felony under the residual clause, the offense must be one that: "(1) poses a serious potential risk of physical injury to others; and (2) involves the same kind of purposeful, violent, and aggressive conduct as the enumerated offenses of burglary, arson, extortion, or offenses involving the use of explosives." *Young*, 580 F.3d at 377 (quoting *Begay*, 128 S.Ct. at1586). Plainly robbery, which has as an element the use or threatened immediate use of force against another, is like the enumerated offenses, in both the risk of physical injury to others that it creates and in that it involves purposeful, violent, and aggressive conduct. Similarly, attempted robbery, which required Mansur to take a substantial step in conduct which, if successful, would constitute or result in a robbery, is a crime that creates a serious potential risk of physical injury to another. Furthermore, since the use or threat of force against another person is an element of attempted robbery, attempted robbery involves the same (or greater) kind of purposeful, violent, and aggressive behavior as the enumerated offenses. *See Taylor v. United States*, 495 U.S. 575, 588 (1990) (generically defining the enumerated offense of burglary to have "the basic elements of unlawful or unprivileged entry into, or remaining

convicted of attempted robbery because the use or threatened immediate use of force is still an element of an attempted robbery. Thus, attempted robbery falls exactly within the first prong of the test for a violent felony.

Moreover, contrary to Mansur's attenuation argument, an attempted robbery is also similar in kind and degree of risk posed to the enumerated offenses and, therefore, a violent felony under the residual clause of 18 U.S.C. 924(e)(2)(B)(ii). At some point, even under Mansur's reading, a person must attempt to use or threaten force in order to be convicted of attempted robbery. Even if, under the Ohio statutes, the use or threatened use of force in an attempted robbery may be more attenuated than in a robbery, an attempted robbery still creates a serious risk of potential injury to another and involves the same kind of purposeful, violent, and aggressive conduct as the enumerated offenses.

in, a building or structure, with intent to commit a crime"); *see also James v. United States*, 550 U.S. 192, 208-09 (2007) (noting that attempted burglary is a violent felony). Indeed, attempted robbery involves "conduct" that "makes [it] more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim." *Begay*, 128 S.Ct. at 1586.

In short, because the attempted robbery conviction qualifies as a violent felony under 18 U.S.C. § 924(e)(2)(B), we find that the district court did not err in giving Mansur an enhanced sentence.

## III. CONCLUSION

Because the district court did not err in finding that the seizure which led to the discovery of the firearm did not violate the Fourth Amendment or in giving Mansur an enhanced sentence under 18 U.S.C. § 924(e), we **AFFIRM** the district court's decision denying Mansur's motion to suppress and **AFFIRM** Mansur's sentence.