RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0173p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

WILLIE YATES,

*Defendant-Appellant.*

No. 16-3997

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 5:10-cr-00489-1—Christopher A. Boyko, District Judge.

Argued: June 13, 2017

Decided and Filed: August 9, 2017

Before: MOORE, GILMAN, and COOK, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Claire C. Curtis, FEDERAL PUBLIC DEFENDER'S OFFICE, Cleveland, Ohio, for Appellant. Daniel R. Ranke, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Claire C. Curtis, FEDERAL PUBLIC DEFENDER'S OFFICE, Cleveland, Ohio, for Appellant. Daniel R. Ranke, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

RONALD LEE GILMAN, Circuit Judge. Willie Yates appeals from the district court's sentencing decision in connection with his convictions for being a felon in possession of a firearm and for possessing crack cocaine with the intent to distribute the drug. The court found

Yates to be a career offender under United States Sentencing Guidelines (U.S.S.G.) § 4B1.1(a) based on his prior Ohio convictions for robbery and drug trafficking. Yates contends, however, that he was improperly classified as a career offender, arguing that his Ohio robbery conviction does not qualify as a "crime of violence" under U.S.S.G § 4B1.1(a)(3). He also contends that his sentence is substantively unreasonable because the court failed to consider an applicable policy statement in the commentary to the guidelines. For the following reasons, we **VACATE** Yates's sentence and **REMAND** the case for resentencing.

## I.       BACKGROUND

### A.       Factual background

In 2010, officers with the Akron Police Department executed a search warrant at Yates's residence. The police seized firearms, ammunition, crack cocaine, and drug paraphernalia during the search. Yates was subsequently arrested and charged with being a felon in possession of a firearm, in violation of 18 U.S.C § 922(g)(1), and for possessing crack cocaine with the intent to distribute the drug, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). A jury found Yates guilty of both offenses in 2011.

At sentencing, the district court determined that Yates was an armed career criminal based on his prior criminal history. The court therefore imposed a mandatory minimum sentence under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), and sentenced Yates to prison terms of 327 months on each count, to run concurrently.

### B.       Procedural background

This court affirmed Yates's conviction and sentence in 2012, holding that the district court did not err in classifying Yates as an armed career criminal. *See United States v. Yates*, 501 F. App'x 505 (6th Cir. 2012). Yates later returned to the district court to file a motion under 28 U.S.C. § 2255, alleging that a number of errors occurred during his trial and at his sentencing. The district court denied Yates's motion in 2014. He then filed a notice of appeal and requested a certificate of appealability (COA), which this court granted on the sole issue of whether Yates's counsel provided ineffective assistance during his trial. The court later expanded the

COA to include Yates's claim that he was improperly sentenced under the ACCA in light of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015).

In 2016, this court affirmed the district court's denial of Yates's ineffective-assistance claim, but vacated Yates's sentence. *See Yates v. United States*, No. 14-3547 (6th Cir. April 13, 2016). Yates's status as an armed career criminal was based in part on his 1999 Ohio robbery conviction, which the district court had deemed to be a "violent felony" under the ACCA's residual clause. And because the residual clause was held to be unconstitutionally vague in *Johnson*, this court concluded that Yates was entitled to be resentenced.

An updated Presentence Report, prepared in connection with Yates's resentencing, determined that he was a career offender under U.S.S.G. § 4B1.1 based on his 1999 Ohio robbery conviction and his 2008 Ohio drug-trafficking conviction. Yates's base offense level was therefore set at 34. If this enhancement had not been applied, Yates's base offense level would have been 24. And because Yates was found to be in possession of enough crack cocaine to constitute a felony, the report reflected a four-level increase under U.S.S.G. § 2K2.1(b)(6), which applies such an increase if the defendant "used or possessed [a] firearm or ammunition in connection with another felony offense." His adjusted offense level, without the career-offender enhancement, would have therefore been 28. Yates filed a sentencing memorandum in response to the Presentence Report, arguing that he was not a career offender under U.S.S.G. § 4B1.1 because his Ohio robbery conviction was not a qualifying offense under the guidelines. Yates also contended that, even if he was found to be a career offender, the district court should decline to apply the sentence enhancement based on an applicable policy statement in the commentary to the guidelines.

The district court rejected Yates's arguments and found him to be a career offender with a base offense level of 34. Because of Yates's depression, poor medical condition, and the lack of any disciplinary history while incarcerated, however, the court decided to vary downward from the guidelines range, which was 262 to 327 months of imprisonment. The court instead sentenced Yates to a term of 120 months' imprisonment for his conviction under 18 U.S.C. § 922(g)(1) and a term of 240 months' imprisonment for his conviction under 21 U.S.C. § 841(a)(1), to run concurrently. Yates timely appealed, arguing that (1) the court erred in

sentencing him as a career offender under the guidelines because his Ohio robbery conviction should not be considered a qualifying offense, and (2) the sentence imposed by the court was substantively unreasonable.

## II.    ANALYSIS

### A.    Standard of review

"We review *de novo* a district court's conclusion that a crime qualifies as a predicate offense for the career-offender designation" under the guidelines. *United States v. Skipper*, 552 F.3d 489, 491 (6th Cir. 2009). The reasonableness of a sentence, on the other hand, is reviewed using the abuse-of-discretion standard. *United States v. Carter*, 510 F.3d 593, 600 (6th Cir. 2007). "Review for reasonableness has both procedural and substantive components." *Id.*

### B.    Yates was improperly designated a career offender under the guidelines.

Yates first argues that the district court erred in applying the career-offender enhancement to determine that his base offense level was 34. Under the guidelines,

> [a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). At the time that Yates was sentenced, a "crime of violence" was defined by the guidelines as

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> > (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> >
> > (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a) (2009).

The district court concluded that Yates's 1999 Ohio robbery conviction was a crime of violence and that his 2008 Ohio drug-trafficking conviction was a controlled-substance offense. Yates was therefore subject to the career-offender enhancement under U.S.S.G. § 4B1.1(a)(3) based on these two convictions. On appeal, Yates challenges the court's conclusion that his Ohio robbery conviction qualifies as a crime of violence under U.S.S.G. § 4B1.2(a)(1) (the force clause). The government responds that Yates's robbery conviction is indeed a crime of violence under the force clause and that, in the alternative, robbery is a crime of violence under § 4B1.2(a)(2) (the enumerated-offenses clause). We will address each of these arguments in turn.

### 1. *Yates's conviction under Ohio Rev. Code Ann. § 2911.02(A)(3) does not qualify as a crime of violence under U.S.S.G. § 4B1.2(a)(1).*

Yates was convicted of robbery in 1999 under Ohio Rev. Code Ann. § 2911.02(A)(3), which provides as follows:

> (A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall . . .
>
> > (3) Use or threaten the immediate use of force against another.

For the purpose of this statute, force is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." Ohio Rev. Code Ann. § 2901.01(A)(1).

Yates first contends his robbery conviction is not a crime of violence because the degree of physical force required by the guidelines' force clause is "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010). (We note that this 2010 *Johnson* decision is distinct from the Supreme Court's 2015 decision of the same name that we have previously cited.) Yates argues that the force criminalized by Ohio Rev. Code Ann. § 2911.02(A)(3)—"any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing"—is less than the violent force required by the guidelines' force clause as interpreted by *Johnson*.

This court has previously addressed the Ohio robbery statute at issue in the unpublished opinion of *United States v. Mansur*, 375 F. App'x 458 (6th Cir. 2010). The court in *Mansur* determined that the defendant's conviction for attempted robbery under Ohio law qualified as a violent felony under the ACCA because "the crime of robbery clearly has as an element the use, attempted use, or threatened use of physical force against another person." *Id.* at 463–64.

Ordinarily, "we treat a holding that a crime is categorically a violent felony under the ACCA as controlling as to whether that same crime is a crime of violence under § 4B1.1." *United States v. Hibbit*, 514 Fed. App'x. 594, 597 (6th Cir. 2013). But because *Mansur* is unpublished, we are not bound by its holding. *See Bell v. Johnson*, 308 F.3d 594, 611 (6th Cir. 2002) ("It is well-established law in this circuit that unpublished cases are not binding precedent."). We also find the reasoning of *Mansur* unpersuasive in light of Supreme Court precedent, Ohio state-court decisions, and more recent caselaw from our sister circuits.

In determining whether Yates's conviction under Ohio Rev. Code Ann. § 2911.02(A)(3) is a crime of violence as defined by the guidelines, we must "apply a 'categorical' approach, meaning that we look at the statutory definition of the crime of conviction, not the facts underlying that conviction, to determine the nature of the crime." *See United States v. Ford*, 560 F.3d 420, 421–22 (6th Cir. 2009). Under the categorical approach, we must first assume that Yates's "conviction 'rested upon [nothing] more than the least of th[e] acts' criminalized, and then determine whether even those acts" would qualify as a crime of violence under the guidelines. *See Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013) (quoting *Johnson*, 559 U.S. at 137). The minimum culpable conduct criminalized by the state statute includes only conduct to which there is a "realistic probability, not a theoretical possibility" that the state would apply the statute. *Id.* at 1685 (quoting *Gonzales v. Duenas–Alvarez*, 549 U.S. 183, 193 (2007)). In other words, we must determine the minimum level of force criminalized by Ohio Rev. Code Ann. § 2911.02(A)(3) and then resolve whether that conduct constitutes the type of violent force required by the guidelines' force clause.

The force criminalized by Ohio Rev. Code Ann. § 2911.02(A)(3) is defined as "*any* violence, compulsion, or constraint physically exerted by *any* means upon or against a person." Ohio Rev. Code Ann. § 2901.01(1)(1) (emphases added). By its plain language, Ohio's

expansive definition of force appears to cover more than force "capable of causing physical pain or injury to another person." *See Johnson*, 559 U.S. at 140; *see also United States v. Mulkern*, 854 F.3d 87, 93–94 (1st Cir. 2017) ("The word 'any' is a powerful beacon to us here, making clear that the crime does not require a showing of force 'capable of causing physical pain or injury'—something short of that will do."); *United States v. Eason*, 829 F.3d 633, 641 (8th Cir. 2016) (holding that, after *Johnson*, the definition of physical force under Arkansas law—being "any . . . [b]odily impact, restraint, or confinement; or [t]hreat of any bodily impact, restraint, or confinement"—"on its face, falls short of requiring 'force capable of causing physical pain or injury to another person.'").

A review of Ohio state-court decisions confirms our view that a defendant need not engage in violent force in order to be convicted of robbery under Ohio Rev. Code Ann. § 2911.02(A)(3). But we acknowledge that, at first glance, the Ohio case of *State v. Carter*, 504 N.E.2d 469 (Ohio Ct. App. 1985), appears to lean the other way. The *Carter* court stated that "[t]he type of force envisioned by the legislature in enacting [the Ohio robbery statute] is that which poses actual or potential harm to a person." *Id.* at 470. In fact, this court justified its holding in *Mansur* based partially on the above quotation. *See Mansur*, 375 F. App'x at 464 n.8. And the statement in *Carter* could be interpreted to support the conclusion that a conviction under Ohio Rev. Code Ann. § 2911.02(A)(3) requires proof of "force capable of causing physical pain or injury to another person." *See Johnson*, 559 U.S. at 140. But *Mansur* failed to acknowledge that the Ohio courts, in practice, have affirmed Ohio robbery convictions where the force applied by the defendant was lower than the type of violent force required by *Johnson*.

Indeed, the facts before the *Carter* court involved a victim who "had a firm grasp of her purse, with the strap over her shoulder, when [the defendant] pulled it from her" and "then pulled [her] right hand off of [her] left hand here where [she] []was holding the bottom part of [her] purse." *Carter*, 504 N.E.2d at 470–71. The court first reasoned that "the potential for serious physical injury was certainly present" in light of the woman's age, *id.* at 470, and therefore the threat of the immediate use of physical force existed as contemplated by Ohio Rev. Code Ann. § 2911.02(A)(3). Had *Carter* rested its holding solely on the existence of this *threat* of serious physical injury, we might be inclined to reaffirm *Mansur*'s holding that "the crime of robbery

[under Ohio law] clearly has as an element the use, attempted use, or threatened use of physical force against another person." *Mansur*, 375 F. App'x 458 at 463–64.

But the *Carter* court went on to hold that this purse-snatching incident entailed the requisite degree of *actual* force sufficient to constitute robbery under Ohio Rev. Code Ann. § 2911.02(A)(3). The court stated that, "[g]iven [the victim's] vulnerability, the force applied, *however minuscule*, was within the contemplation of the statute," so that "Carter's acts . . . in grabbing the victim's purse constituted the actual use of force." *Carter*, 504 N.E.2d at 471 (emphasis added). To support this conclusion, the court cited an unpublished Ohio appellate case holding "that the act of bumping an elderly victim in order to distract her attention while another person removed her wallet from her purse comprises force under the robbery statute." *Id*. at 470 (citing *State v. Grant*, No. 43027, 1981 WL 4576, at *2 (Ohio Ct. App. Oct. 22, 1981)). Indeed, the *Carter* court explicitly quoted *Grant*'s language that "a bump is an act of violence within the meaning of R.C. 2901.01(A), even though only mildly violent, as the statute does not require a high degree of violence." *Id.* (quoting *Grant*, No. 43027, 1981 WL 4576, at *2).

Subsequent Ohio decisions reinforce our conclusion that only a minimal level of force is needed to sustain a conviction under Ohio Rev. Code Ann. § 2911.02(A)(3). In another purse-snatching case, an Ohio appellate court upheld the defendant's conviction for robbery when he "ran up to [the victim], grabbed her purse, jerked her arm back, and kept running." *In re Boggess*, 2005-Ohio-6527, 2005 WL 3344502, at *1 (Ohio Ct. App. 2005). The *Boggess* court addressed the level of force required by Ohio Rev. Code Ann. § 2911.02(A)(3), noting that "[i]n purse snatching cases, the evidence is sufficient to show that defendant exerted force toward victim, so as to support conviction for robbery, when it shows that the accused physically exerted enough force upon the victim's arm so as to remove the purse from her involuntarily." *Id.* at 3; *see also State v. Juhasz*, 2015-Ohio-3801, 2015 WL 5515826, at *2 (Ohio Ct. App. 2015) (recognizing that "Ohio courts have held that a struggle over control of an individual's purse has been sufficient to establish the element of force" and that "the struggle need not be prolonged or active; the act of forcibly removing a purse from an individual's shoulder is sufficient"). These cases show that, at the very least, a "realistic probability" exists that Ohio is applying Ohio Rev.

Code Ann. § 2911.02(A)(3) in such a way that criminalizes a level of force lower than the type of violent force required by *Johnson. See Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013) (quoting *Johnson*, 559 U.S. at 137).

Finally, our conclusion is in line with recent decisions from other federal appellate courts across the country that have addressed the issue before us now: whether the state robbery statute in question contains as an element the use, attempted use, or threatened use of "force capable of causing physical pain or injury to another person." *See Johnson*, 559 U.S. at 140. We conclude that Ohio Rev. Code Ann. § 2911.02(A)(3) is akin to those state robbery statutes held not to contain such a high level of force. The statute is also markedly *dissimilar* to the state statutes held to criminalize the level of violent force necessary to sustain a sentence enhancement under the guidelines.

For example, in *United States v. Bell*, 840 F.3d 963 (8th Cir. 2016), the Eighth Circuit held that a conviction under Missouri's second-degree robbery statute did not qualify as a crime of violence because it did "not necessarily require use of the type of violent force described by the Supreme Court in *Johnson*." *Id.* at 966–67. To support its conclusion, the court pointed to a case in which "the Missouri Court of Appeals sustained a conviction [for second-degree robbery] based on the victim's testimony that the defendant ''bumped' her shoulder and 'yanked' her purse away from her[,]' while 'another witness testified that [the defendant] 'nudged' [the victim],' and yet a 'third witness testified that there was a 'slight' struggle' over the purse." *See id.* at 966 (quoting *State v. Lewis*, 466 S.W.3d 629, 631 (Mo. Ct. App. 2015)). Also relevant to the court's decision was the fact that "the victim did not testify [that] the slight struggle caused her any pain, or that she was injured by the incident." *Id*. The Eighth Circuit therefore concluded that "there is at least a 'reasonable probability' Missouri could apply its statute (or already has) to conduct falling short of violent force." *Id*. (quoting *Moncrieffe*, 133 S. Ct. at 1685).

Other circuits have similarly held that, when a state robbery statute criminalizes minimal force, such as the force incidental to purse-snatching, a conviction under that statute is not a "crime of violence" under the guidelines' force clause or a "violent felony" under the ACCA force clause. *See United States v. Mulkern*, 854 F.3d 87, 93 (1st Cir. 2017) (holding that a state

conviction for robbery in Maine was not a violent felony under the ACCA because "Maine's highest court recognizes that '*any* physical force' suffices to satisfy the 'physical force' element [of the robbery statute]," including "'the mere act of snatching a purse from the hand of a victim' . . . , even if the robber never made 'direct bodily contact' with the victim") (emphasis in original); *United States v. Gardner*, 823 F.3d 793, 803–04 (4th Cir. 2016) (holding that a conviction under the North Carolina robbery statute did not qualify as a violent felony under the ACCA in light of decisions from the North Carolina Court of Appeals holding "that a defendant's act of pushing the victim's hand off of a carton of cigarettes was sufficient 'actual force' to uphold a common law robbery conviction" and upholding "a conviction when a defendant pushed the shoulder of an electronics store clerk, causing her to fall onto shelves while the defendant took possession of a television") (internal citations omitted); *see also United States v. Nicholas*, No. 16-3043, 2017 WL 1429788, at *3–5 (10th Cir. Apr. 24, 2017) (holding that a conviction under the Kansas robbery statute is not a violent felony under the ACCA); *United States v. Winston*, 850 F.3d 677, 684–85 (4th Cir. 2017) (holding that a conviction under the Virginia robbery statute is not a violent felony under the ACCA); *United States v. Eason*, 829 F.3d 633, 640–42 (8th Cir. 2016) (holding that a conviction under the Arkansas robbery statute is not a violent felony under the ACCA).

The force required for a conviction under Ohio Rev. Code Ann. § 2911.02(A)(3) is similarly not "violent force . . . capable of causing physical pain or injury to another person." *See Johnson*, 559 U.S. at 140. Instead, Ohio appellate courts have held that "bumping into an individual," *Carter*, 504 N.E.2d at 471 (quoting *Grant*, 1981 WL 4576, at *2), and that the force "exerted . . . upon the victim's arm so as to remove the purse from her involuntarily," *Boggess*, 2005 WL 3344502, at *3, is sufficient to sustain a conviction under Ohio Rev. Code Ann. § 2911.02(A)(3). We therefore see no way to distinguish this level of force from the force held to be minimal by our sister circuits. *See, e.g.*, *Gardner*, 823 F.3d at 803–04 (holding that "the minimum conduct necessary to sustain a conviction for North Carolina common law robbery does not necessarily include the use, attempted use, or threatened use of 'force capable of causing physical pain or injury to another person,'" where "even minimal contact may be sufficient to sustain a robbery conviction if the victim forfeits his or her property in response").

Ohio Rev. Code Ann. § 2911.02(A)(3) also stands in stark contrast to the statutes held by this and other circuits to contain as an element the use, attempted use, or threatened use of "force capable of causing physical pain or injury to another person." *See Johnson*, 559 U.S. at 140. The level of force criminalized by the relevant state statutes in these cases is much greater than the level of force criminalized by the Ohio robbery statute. For example, in *United States v. Harris*, 844 F.3d 1260, 1266–68 (10th Cir. 2017), the Tenth Circuit held that a conviction under the Colorado robbery statute constituted a violent felony under the ACCA because the Colorado Supreme Court had explicitly held that "the gravamen of the offense of robbery is the violent nature of the taking." *Id.* at 1267 (quoting *People v. Borghesi*, 66 P.3d 93, 100–01) (Colo. 2003)). In fact, the Tenth Circuit distinguished the level of force required by the Colorado statute from those state robbery statutes criminalizing a lower level of nonviolent force, such as the force inherent in purse-snatching incidents. *See id.* at 1267–68, 1268 n.6 (distinguishing the Colorado robbery statute from the state robbery statutes at issue in *Bell, Gardner,* and *Eason*).

Other cases holding that the state robbery statute in question involved the use or threat of violent force have made similar findings. *See United States v. Doctor*, 842 F.3d 306, 308–12 (4th Cir. 2016) (holding that robbery in South Carolina is a violent felony under the ACCA based, in part, on the fact that, unlike robbery statutes that criminalize purse-snatching incidents, "there is no indication that South Carolina robbery by violence can be committed with minimal actual force"), *cert. denied*, No. 16-8435, 137 S.Ct. 1831 (2017) (Mem.); *United States v. Priddy*, 808 F.3d 676, 686 (6th Cir. 2015) (holding that robbery in Tennessee constitutes a violent felony under the ACCA because the statute specifically requires a showing of violence, which is defined as "physical force unlawfully exercised so as to injure, damage or abuse," or a showing that the victim was in "fear of bodily injury and of present personal peril from violence offered or impending"), *abrogated on other grounds by United States v. Stitt*, —F.3d—, 2017 WL 2766326 (6th Cir. June 27, 2017) (en banc).

In short, the case before us is distinguishable from the line of circuit decisions upholding the use of state robbery convictions for sentence-enhancement purposes because "[i]n each of these cases, there was either an explicit element of violence in the statute . . . or an absence of state authority demonstrating a reasonable probability that state courts would apply the statute to

non-violent conduct." *Nicholas*, 2017 WL 1429788 at \*5 (internal citations omitted).  Ohio Rev. Code Ann. § 2911.02(A)(3), in contrast,  has no explicit requirement of violent force, and Ohio caselaw indicates that a defendant can be convicted of robbery based on a showing of nonviolent force, such as the force inherent in a purse-snatching incident or from bumping against an individual.  *See Carter*, 504 N.E.2d at 471 (quoting *Grant*, 1981 WL 4576, at \*2); *Boggess*, 2005 WL 3344502.

Based on Ohio state-court decisions, and guided by the various circuit cases, we therefore conclude that the force criminalized by Ohio Rev. Code Ann. § 2911.02(A)(3) is not "*violent* force . . . capable of causing physical pain or injury to another person."  *See Johnson*, 559 U.S. 133, 140 (2010) (emphasis in original).  A "realistic probability" exists, in other words, that Ohio is applying Ohio Rev. Code Ann. § 2911.02(A)(3) in such a way that criminalizes a level of force lower than the type of violent force required by *Johnson*.  As a consequence, Yates's conviction under that statute does not constitute a crime of violence under the guidelines' force clause, meaning that he is entitled to be resentenced.  *See Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013).

Because we hold that Ohio Rev. Code Ann. § 2911.02(A)(3) does not require proof of sufficient physical force to constitute a crime of violence under U.S.S.G.  § 4B1.2(a)(1), we have no need to address Yates's alternative argument that the Ohio robbery statute also lacks as an element sufficient mens rea to qualify as a crime of violence under the guidelines.  We instead turn to the government's alternative argument under U.S.S.G. § 4B1.2(a)(2).

### 2.      *Yates's conviction under Ohio Rev. Code Ann. § 2911.02(A)(3) does not qualify as a crime of violence under U.S.S.G. § 4B1.2(a)(2).*

The government argues, in the alternative, that Yates's conviction under Ohio Rev. Code Ann. § 2911.02(A)(3) qualifies as a crime of violence under U.S.S.G. § 4B1.2(a)(2) (the enumerated-offenses clause).  True enough, the 2016 edition of the guidelines defines a "crime of violence" to include "murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, *robbery*, arson, extortion, or the use or unlawful possession of a firearm . . . or explosive material."  U.S.S.G. § 4B1.2(a)(2) (2016) (emphasis added).  But at the time of Yates's sentencing, robbery was not included in the list of enumerated offenses deemed to be

crimes of violence. Instead, the enumerated-offenses clause listed only "burglary of a dwelling, arson, . . . extortion, [or the] use of explosives" as crimes of violence. U.S.S.G. § 4B1.2(a)(2) (2009).

Although robbery was not an enumerated offense at the time of Yates's sentencing, it has since been added to the enumerated clause by a 2016 Amendment that applies retroactively. *See United States v. Kennedy*, No. 15-1456, --- F. App'x ---, 2017 WL 1078552, *8 (6th Cir. Mar. 22, 2017). Yates may therefore be subject to a career-offender enhancement if his prior convictions under Ohio Rev. Code Ann. § 2911.02(A)(3) fall within the generic definition of robbery, "which is found by surveying how the crime is described across jurisdictions, as well as consulting sources such as the Model Penal Code." *See United States v. Rede-Mendez*, 680 F.3d 552, 556 (6th Cir. 2012). If the Ohio statute criminalizes conduct "broader than the generic definition" by "reach[ing] conduct outside the scope of that covered by the generic definition," however, then that statute cannot constitute a crime of violence under § 4B1.2. *See United States v. Cooper*, 739 F.3d 873, 880 (6th Cir. 2014).

This circuit has not yet adopted a definition for generic robbery. Other circuits, however, have observed that "the generic form of robbery 'may be thought of as aggravated larceny,' containing at least the elements of 'misappropriation of property under circumstances involving immediate danger to the person.'" *United States v. Santiesteban-Hernandez*, 469 F.3d 376, 380 (5th Cir. 2006) (brackets omitted) (quoting Wayne R. LaFave, *Substantive Criminal Law* § 20.3 intro., (d)(2) (2d ed. 2003)), *abrogated on other grounds by United States v. Rodriguez*, 711 F.3d 541 (5th Cir. 2013). And the Fifth Circuit has noted that this "immediate danger element" is what differentiates robbery from larceny and extortion and "has been implemented by the states in two main ways." *Id. Compare id.* ("The majority of states require property to be taken from a person or a person's presence by means of force or putting in fear."), *with United States v. Lockley*, 632 F.3d 1238, 1243 (11th Cir. 2011) ("A small minority of states and the Model Penal Code, however, 'define 'robbery' in terms of 'bodily injury' or 'committing violence' or 'physical harm,'' or some amalgam of those terms and the majority definition.").

But "[t]he difference in the majority and minority definitions is slight." *Lockley*, 632 F.3d at 1244; *see also Santiesteban-Hernandez*, 469 F.3d at 381 (noting that "the bodily

injury approach focuses on the realization of the immediate danger rather than the means by which the immediate danger is created, but they are two sides of the same coin"). Professsor LaFave in his treatise looks to the majority definition of robbery, listing as an element of the offense "that the taking be accomplished by means of force or putting in fear." LaFave, *supra*, § 20.3 intro. In discussing this element, he further observes that "robbery requires that the taking be done by means of *violence* or intimidation." *Id.* at § 20.3(d) (emphasis added). This mention of violence indicates that the type of force contemplated by the generic definition of robbery is more than minimal. *See id.* at § 20.3 intro. The Editors' Notes to the Model Penal Code, which reflects the minority definition of robbery, similarly comments that "[r]obbery is distinguished from ordinary larceny by the presence of the victim and the use or threat of violence." Model Penal Code § 222.1.

Finally, precedent from this circuit supports the conclusion that generic robbery requires a confrontation that at the very least implies the threat of violence. *See United States v. Mitchell*, 743 F.3d 1054 (6th Cir. 2014). In *Mitchell*, this court analyzed whether a conviction under the Tennessee robbery statute qualified as a violent felony as defined by the ACCA. Although the *Mitchell* court did not adopt a definition of generic robbery, it did discuss the degree of risk posed by the Tennessee robbery statute. It observed that "[r]obbery presents an even greater degree of risk of physical injury relative to [generic] burglary" because, "[w]hereas burglary raises the mere possibility of confrontation, robbery is defined as to guarantee it." *Id.* at 1062.

Professor LaFave summarized this body of law by noting that "[t]he great weight of authority . . . supports the view that there is not sufficient force to constitute robbery when the thief snatches property from the owner's grasp so suddenly that the owner cannot offer any resistance to the taking." LaFave, *supra*, § 20.3(d)(1). Yet, as discussed above, Ohio caselaw establishes that a conviction under Ohio Rev. Code Ann. § 2911.02(A)(3) *can* result from such a minimal use of force. *See, e.g., State v. Juhasz*, 2015-Ohio-3801, 2015 WL 5515826 (Ohio Ct. App. 2015) (recognizing that that "the struggle [over a victim's purse] need not be prolonged or active; the act of forcibly removing a purse from an individual's shoulder is sufficient" to establish the element of force supporting a robbery conviction); *In re Boggess*, 2005-Ohio-6527, 2005 WL 3344502, at *1 (Ohio Ct. App. 2005) (upholding the defendant's conviction for

robbery when he "ran up to [the victim], grabbed her purse, jerked her arm back, and kept running").

Generic robbery, in sum, constitutes the "misappropriation of property under circumstances involving immediate danger to the person." *Santiesteban-Hernandez*, 469 F.3d at 380 (brackets omitted) (quoting LaFave, *supra*, § 20.3 intro., (d)(2)). In rendering our holding today, we need not decide whether to define the element of "immediate danger" with reference to the serious bodily injury suffered by or threatened against the victim or with reference to the force used by the defendant. Either way, Ohio Rev. Code Ann. § 2911.02(A)(3) "reaches conduct outside the scope of that covered by the generic definition." *See Cooper*, 739 F.3d at 880. Yates's 1999 conviction for Ohio robbery therefore does not constitute a crime of violence under the enumerated clause.

**C.      Yates's challenge to the substantive reasonableness of his sentence**

Because of our conclusion that Yates was improperly designated as a career offender under the guidelines and is entitled to be resentenced, we decline to address his argument concerning the substantive reasonableness of his sentence. That issue will have to await another day.

## III.    CONCLUSION

For all of the reasons set forth above, we **VACATE** Yates's sentence and **REMAND** the case for resentencing.