NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0253n.06
No. 18-3597

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

JOSE ANGEL HERNANDEZ-MALDONADO,

     Petitioner,

v.

WILLIAM P. BARR, Attorney General,

     Respondent.

_____

**FILED**
May 10, 2019
DEBORAH S. HUNT, Clerk

ON PETITION FOR REVIEW FROM THE BOARD OF IMMIGRATION APPEALS

BEFORE:    MERRITT, CLAY, and ROGERS, Circuit Judges.

**CLAY, Circuit Judge.** Petitioner Jose Angel Hernandez-Maldonado appeals the Board of Immigration Appeals' June 19, 2018 order that Petitioner be removed from the United States pursuant to the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(E)(i), as a result of his conviction for domestic violence in violation of Ohio Rev. Code § 2919.25(C). For the reasons set forth below, we **AFFIRM** the removal order.

**BACKGROUND**

**Factual Background**

Petitioner is a 46-year-old native and citizen of Mexico who first arrived in the United States in 1997. On March 18, 2008, Petitioner became a lawful permanent resident. On November 13, 2008, Petitioner was convicted in Ohio state court for domestic violence in violation of Ohio Rev. Code § 2919.25. The state court later issued a nunc pro tunc order clarifying that Petitioner was convicted for violating § 2919.25(C).

**Procedural History**

On November 17, 2008, Respondent initiated removal proceedings against Petitioner pursuant to the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(E)(i). Petitioner admitted that he was convicted for domestic violence in violation of Ohio Rev. Code § 2919.25(C), but denied that he was subject to removal, asserting that his conviction did not qualify as a "crime of violence" under 18 U.S.C. § 16(a). On October 4, 2010, the Immigration Judge ("IJ") determined that Petitioner's conviction did qualify as a "crime of violence" under 18 U.S.C. § 16(a), and ordered that Petitioner be removed from the United States. On June 19, 2018, the Board of Immigration Appeals ("BIA") affirmed the IJ's determination and order.

This appeal followed.

**DISCUSSION**

**I.      Standard of Review**

Where, as here, the BIA reviews the decision of an IJ and issues a separate opinion rather than summarily affirming the IJ's decision, we review the BIA's opinion as the final agency determination. *Al-Ghorbani v. Holder*, 585 F.3d 980, 991 (6th Cir. 2009). Whether a prior conviction qualifies as a "crime of violence" under 18 U.S.C. § 16(a) is a question of law that we review *de novo. Van Don Nguyen v. Holder*, 571 F.3d 524, 528 (6th Cir. 2009).

**II.      Analysis**

At issue in this case is whether Petitioner's conviction for domestic violence in violation of Ohio Rev. Code § 2919.25(C) qualifies as a "crime of violence" under 18 U.S.C. § 16(a). Ohio Rev. Code § 2919.25 provides, in relevant part:

> (A)  No person shall knowingly cause or attempt to cause physical harm to a family or household member.
> (B)   No person shall recklessly cause serious physical harm to a family or household member.

2

(C) No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member.

(D)(1) Whoever violates this section is guilty of domestic violence, and the court shall sentence the offender as provided in divisions (D)(2) to (6) of this section.

(2) Except as otherwise provide in divisions (D)(3) to (5) of this section, a violation of division (C) of this section is a misdemeanor of the fourth degree, and a violation of division (A) or (B) of this section is a misdemeanor of the first degree.

(3) [Sentencing a defendant with one prior domestic violence conviction]

(4) [Sentencing a defendant with two or more prior domestic violence convictions]

(5) [Sentencing a defendant who knew the victim was pregnant at the time of the violation]

(6) If division (D)(3), (4), or (5) of this section requires the court that sentences an offender or a violation of division (A) or (B) of this section to impose a mandatory prison term on the offender pursuant to this division, the court shall impose the mandatory prison term as follows . . . .

A prior conviction qualifies as a "crime of violence" under 18 U.S.C. § 16(a) if it is for an offense that "has as an element the use, attempted use, or threatened use of physical force against the person . . . of another." 18 U.S.C. § 16(a). Typically referred to as the "elements clause," this provision "mirrors . . . analogous clause[s]" in the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(i) and the United States Sentencing Guidelines, U.S.S.G. § 4B1.2(a)(1). *United States v. Verwiebe*, 874 F.3d 258, 260 (6th Cir. 2017). As a result, this Court has frequently held that the elements clause is "read . . . the same way" in each context. *Id.*; *see also United States v. Rede-Mendez*, 680 F.3d 552, 555 n.2 (6th Cir. 2012).

This Court recently clarified the analytical framework applicable when determining whether a prior conviction qualifies as a predicate offense under the elements clause. *See United States v. Burris*, 912 F.3d 386 (6th Cir. 2019) (en banc).

"Since 1990, the Supreme Court has instructed federal sentencing courts to use the 'categorical approach' to determine whether a defendant's previous state or federal [conviction]

3

'ha[s] as an element the use, attempted use, or threatened use of physical force against the person of another.'" *Id.* at 392 (quotation omitted). "The categorial approach prohibits federal sentencing courts from looking at the particular facts of a defendant's previous state or federal [conviction]; rather, federal sentencing courts 'may look only to the statutory definitions—*i.e.*, the elements—of a defendant's prior offense[].'" *Id.* (quotation omitted). Accordingly, "[t]he question . . . in the elements-clause context is whether every defendant convicted of that state or federal [offense] *must have* used, attempted to use, or threatened to use physical force against the person of another *in order to have been convicted*, not whether the particular defendant *actually* used, attempted to use, or threatened to use physical force against the person of another *in that particular case*." *Id*.

To answer that question, we "must conduct two analyses." *Id.* at 393. One is a "divisibility analysis to determine whether the statute in question is divisible because it sets out multiple separate crimes" as opposed to multiple means of committing the same crime. *Id*. The other is an "overbreadth analysis to determine whether the statute in question is too broad to categorically qualify as a [predicate offense] because it criminalizes more conduct than is described in" the elements clause. *Id*. We begin with the divisibility analysis.[1]

---

[1] In *Burris*, this Court "express[ed] no opinion" as to the order in which these two analyses should be conducted, and chose to begin with the overbreadth analysis simply because it was "the more useful approach." *Id.* at 396 n.6. However, we choose to conduct the divisibility analysis before the overbreadth analysis because the latter depends on the former. If a statute is *indivisible*, the overbreadth analysis is straightforward. The statute either criminalizes more conduct than is described in the elements clause, and thus cannot qualify as a predicate offense, or it does not criminalize more conduct than is described in the elements clause, and thus can qualify as a predicate offense. *See id.* at 392–93. But if a statute is *divisible*, the overbreadth analysis is less straightforward, because we must apply the "modified categorical approach" as a "tool" that "helps implement" the categorical approach. *Cradler v. United States*, 891 F.3d 659, 668 (6th Cir. 2018) (quotation omitted)*; see also Burris*, 912 F.3d at 393. The modified categorical approach "allows sentencing courts 'to consult a limited class of documents'" in order to determine which of the "multiple separate crimes" is at issue, before "do[ing] what the categorial approach demands: compar[ing] the elements of [that crime] with the [elements clause]." *Burris*, 912 F.3d at 392–93 (quotations omitted).

Moreover, conducting the divisibility analysis before the overbreadth analysis eliminates the risk that we might conduct the overbreadth analysis on a statutory provision under which the defendant was not convicted. In *Burris*, such unnecessary analysis was conducted, but ultimately discouraged by 12 of the 18 judges that decided the case. *See id.* at 410 (Rogers, J., concurring in part and in the judgment); *id.* at 410–11 (Kethledge, J., concurring in the judgment); *id.* at 412–14 (Cole, J., concurring in part and dissenting in part). We note that such unnecessary analysis would also be conducted in this case if we were to conduct the overbreadth analysis before the divisibility

### A. Divisibility Analysis

Whether Ohio Rev. Code § 2919.25 is divisible is an issue of first impression for this Court.

"'Divisible' statutes . . . are statutes which 'set out one or more elements of the offense in the alternative,' 'thereby defining multiple crimes'" as opposed to multiple means of committing the same crime. *Burris*, 912 F.3d at 402 (quotation and alterations omitted). There are "several ways to determine whether a state statute is divisible, each of which is based on state law." *Id.* First, "[t]here may be 'a state court decision' that 'definitively answers the question.'" *Id.* (quotation omitted). Second, "the statute on its face may resolve the issue." *Id.* (quotation omitted). Lastly, and relatedly, the statutory punishment scheme may resolve the issue. *Id.* "Where state law is unclear on whether a statute is divisible, we may 'peek at the record documents' for 'the sole and limited purpose of determining whether the listed items are elements of the offense.'" *Id.* (quotation omitted). "Where both state law and the record documents are unclear," the statute is deemed indivisible, because a sentencing judge "will not be able to satisfy" the requisite demand for certainty when determining whether a defendant was convicted of a qualifying predicate offense. *Id.* (quotation omitted).

In this case, the statutory punishment scheme resolves the issue.

If the statutory alternatives "carry different punishments, then under *Apprendi* they must be elements," and the statute must be divisible.[2] *Id.* at 405 (quotation omitted); *see also United*

---

analysis. Specifically, we would conduct the overbreadth analysis on Ohio Rev. Code §§ 2919.25(A) and (B) despite the fact that Defendant was convicted under Ohio Rev. Code § 2919.25(C). *See id.* at 391.

Thus, it is unsurprising that the Supreme Court and this Court have frequently endorsed this logical ordering of the two analyses. *See Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016); *see also Raines v. United States*, 898 F.3d 680, 688 (6th Cir. 2018); *United States v. Mitchell*, 743 F.3d 1054, 1064 (6th Cir. 2014); *United States v. Covington*, 738 F.3d 759, 763 (6th Cir. 2014).

[2] The reasoning underlying this rule is that "any fact that increases the penalty for a crime . . . must be submitted to a jury, and proved beyond a reasonable doubt," *Apprendi v. New Jersey*, 530 U.S. 466, 489 (2000), and that any fact that must be proved beyond a reasonable doubt "to sustain a conviction" must be an "element" of the

*States v. Ritchey*, 840 F.3d 310, 320 (6th Cir. 2016). And the Ohio Supreme Court has succinctly

explained part of the statutory punishment scheme set out in § 2919.25(D) as follows:

> A first-time [domestic violence] offense is either a misdemeanor of the fourth
> degree or a misdemeanor of the first degree, depending upon the [sub]section under
> which the defendant is charged. A second offense is either a felony of the fourth
> degree or a second-degree misdemeanor. [And] [i]f the offender has "pleaded guilty
> to or been convicted of two or more offenses of domestic violence," a subsequent
> domestic-violence offense is elevated to either a felony of the third degree or a first-
> degree misdemeanor.

*State v. Gwen*, 982 N.E.2d 626, 629 (Ohio 2012) (internal citations omitted). As this

passage makes clear, the degree of offense with which a defendant is charged *depends on the*

*subsection of § 2919.25 that they are charged with violating*. For instance, a first-time violation of

§ 2919.25(A) or (B) is a first-degree misdemeanor while a first-time violation of § 2919.25(C) is

a fourth-degree misdemeanor. *See* § 2919.25(D)(2). And the degree of offense then determines a

defendant's maximum sentence. For instance, a first-degree misdemeanor carries a punishment of

up to 180 days in prison, while a fourth-degree misdemeanor carries a punishment of up to 30 days

in prison. Ohio Rev. Code § 2929.24(A). Additionally, subsequent violations of § 2919.25(A) or

(B) can result in mandatory minimum prison terms, while subsequent violations of § 2919.25(C)

cannot. *See* § 2919.25(D)(6).

Accordingly, the statutory alternatives "carry different punishments," and we hold that

§ 2919.25 is divisible. *Burris*, 912 F3d at 405; *see also Ritchey*, 840 F.3d at 320.

**B.    Overbreadth Analysis**

Because § 2919.25 is divisible, we next must apply the "modified categorical approach" as

a "tool" that "helps implement" the categorical approach. *Cradler v. United States*, 891 F.3d 659,

---

crime, as opposed to a means of committing the crime. *Richardson v. United States*, 890 F.3d 616, 620 (6th Cir. 2018)
(quotation omitted); *see also Mathis*, 136 S. Ct. at 2256.

668 (6th Cir. 2018) (quotation omitted)*; see also Burris*, 912 F.3d at 393. The modified categorical approach "allows sentencing courts 'to consult a limited class of documents'" in order to determine which of the "multiple separate crimes" is at issue, before "do[ing] what the categorial approach demands: compar[ing] the elements of [that crime] with the [elements clause]." *Burris*, 912 F.3d at 392–93 (quotation omitted). This limited class of documents consists of the indictment, jury instructions, plea agreement and colloquy, or "other comparable judicial records." *Raja v. Sessions*, 900 F.3d 823, 827 (6th Cir. 2018). In this case, the state court in which Petitioner was convicted later issued a nunc pro tunc order clarifying that Petitioner was convicted for violating § 2919.25(C).

Accordingly, we must compare the elements of § 2919.25(C) with the elements clause to determine whether the former is "too broad to categorically qualify as a [predicate offense] because it criminalizes more conduct than is described in" the latter. *Burris*, 912 F.3d at 393. In making that determination, we must ask two questions. First, whether an individual can "at least theoretically" violate the statute "without using, attempting to use, or threatening to use physical force against the person of another." *Id.* at 397. Second, if so, whether there is a "realistic probability" that the state would apply the statute to such conduct. *Id.* at 398. If there is, then the statute is overbroad and cannot qualify as a predicate offense. *Id.* at 393. If there is not, then statute is not overbroad and can qualify as a predicate offense. *Id.*

Whether Ohio Rev. Code § 2919.25(C) is overbroad is a question of first impression for this Court. It provides that "[n]o person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member." Ohio Rev. Code § 2919.25(C). Ohio defines "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person," Ohio Rev.

Code § 2901.01(A)(1), and defines "physical harm to persons" as "any injury, illness, or other physiological impairment, regardless of its gravity of duration." Ohio Rev. Code § 2901.01(A)(3). "'Physical force,' as used in [the elements clause], means '*violent force*—that is, force capable of causing physical pain or injury to another person.'" *Burris*, 912 F.3d at 399 (quotation omitted).

Pursuant to this Court's decision in *Burris*, and several related decisions, we hold that § 2919.25(C) is *not* overbroad and *can* qualify as a predicate offense, because an individual *cannot* violate the statute without using, attempting to use, or threatening to use force capable of causing physical pain or injury to another person. *See* 912 F.3d at 397. Respondent's arguments helpfully frame the analysis that leads to this conclusion.

Respondent first argues that § 2919.25(C) does not criminalize more conduct than the elements clause because § 2919.25(C) requires a "threat of force," which necessarily requires proof of the threatened use of "force capable of causing physical pain or injury to another person." Such an argument would require us to address this Court's holding in *United States v. Yates*, 866 F.3d 723, 728 (6th Cir. 2017) that "[b]y its plain language, Ohio's expansive definition of force appears to cover more than force 'capable of causing physical pain or injury to another person." Ohio defines "force" as "*any* violence, compulsion, or constraint physically exerted by *any* means upon or against a person," and "[t]he word 'any' is a powerful beacon . . . making clear that the [definition] does not require a showing of force 'capable of causing physical pain or injury'" *Id.* (quotation omitted). Rather, "something short of that will do." *Id.* (quotation omitted). We assume for purposes of argument that *Yates* is still good law in this respect,[3] and that § 2919.25(C)'s "threat

---

[3] The Supreme Court's recent decision in *Stokeling v. United States*, 139 S. Ct. 544 (2019) casts doubt on this Court's ultimate holding in *Yates* that Ohio's robbery statute was overbroad. However, this Court's explanation in *Yates* of the "plain language" of Ohio's definition of "force" may remain sound. Purely as a theoretical matter, "*any* violence, compulsion or constraint physically exerted by *any* means" could cover more than the amount of force proscribed by the elements clause, *Yates*, 866 F.3d at 728, notwithstanding the Supreme Court's explication about that amount of force in *Stokeling*.

of force" requirement does not necessarily require proof of the threatened use of force "capable of causing physical pain or injury to another person."

Respondent next argues § 2919.25(C) does not criminalize more conduct than the elements clause because § 2919.25(C) requires "knowingly caus[ing] . . . [a] belie[f] that the offender will cause imminent physical harm," which necessarily requires proof of the threatened use of force "capable of causing physical pain or injury to another person." Specifically, Respondent argues that "because a conviction under Ohio Rev. Code § 2919.25(C) requires that the offender create a fear of imminent 'physical harm,' which necessarily includes violent physical force under *Gatson*, *Evans*, and *Anderson*,[4] the threatened force must be violent force." (Brief for Respondent at 17.)

Before this argument can be properly evaluated, some context is necessary. In *Anderson*, this Court held that Ohio statutes criminalizing knowingly causing "serious physical harm" "necessarily" require proof that the offender used force capable of causing physical pain or injury, based on the ordinary meaning of "serious physical harm." 695 F.3d at 400. In *Evans*, this Court held that an Ohio statute criminalizing knowingly causing "physical harm" "necessarily" requires proof that the offender used force capable of causing physical pain or injury, based on Ohio's definition of "physical harm," and on *Anderson*. 699 F.3d at 864. And in *Gatson*, this Court held that § 2919.25(A), which criminalizes knowingly causing "physical harm," "to some extent, by definition" requires proof that the offender used force capable of causing physical pain or injury, based on Ohio's definition of "physical harm." 776 F.3d at 411.

However, in *Burris*, this Court reasoned that the panel in *Anderson* improperly "analyzed only the ordinary meaning of 'serious physical harm' rather than Ohio's statutory definition [of]

---

[4] Referring to *United States v. Gatson*, 776 F.3d 405 (6th Cir. 2015), *United States v. Evans*, 699 F.3d 858 (6th Cir. 2012), and *United States v. Anderson*, 695 F.3d 390 (6th Cir. 2012).

'serious physical harm,'" which included certain serious mental harms. 912 F.3d at 402. Thus, this Court reasoned that Ohio statutes criminalizing knowingly causing "serious physical harm" do *not* necessarily require proof that the offender used force capable of causing physical pain or injury, based on Ohio's definition of "serious physical harm." *Id.*

After *Burris*, it is clear that in conducting an overbreadth analysis, courts must look to relevant statutory definitions where available, as opposed to ordinary meanings. And significantly, Ohio's definition of "physical harm" does *not* include any mental harms. Rather, it includes "any injury, illness, or other *physiological impairment*, regardless of its gravity of duration." Ohio Rev. Code § 2901.01(A)(3) (emphasis added). Thus, to the extent that *Evans* and *Gatson* relied on the ordinary meaning of "physical harm," *Burris* casts doubt on those holdings. But to the extent that *Evans* and *Gatson* relied on Ohio's definition of "physical harm," those holdings likely remain good law. We must contend with that issue in this case, because if knowingly *causing* "physical harm" necessarily requires proof that the offender *used* force capable of causing physical pain or injury, then knowingly *threatening to cause* "physical harm" necessarily requires proof that the offender *threatened to use* force capable of causing physical pain or injury.

We hold that *Evans* and *Gatson* remain good law in this respect. In *Evans*, this Court held that causing "physical harm" necessarily requires proof that the offender used force capable of causing physical pain or injury, and in doing so relied on Ohio's definition of "physical harm." 699 F.3d at 863. To be sure, this Court later cited *Anderson*, but it never stated any definition of "physical harm" other than the Ohio definition. And in *Gatson*, this Court similarly held that causing "physical harm" necessarily requires proof that the offender used force capable of causing physical pain or injury. 776 F.3d at 410–11. In that case, this Court emphasized that "the key term is 'physical harm,'" and then quoted Ohio's definition of "physical harm." 776 F.3d at 410–11.

Significantly, this Court did not cite *Evans* or *Anderson*, and never stated any definition of "physical harm" other than the Ohio definition. Thus, *Evans* and *Gatson* remain good law. *See, e.g.*, *United States v. Solomon*, No. 18-3058, 2019 WL 588883, at *3–4 (6th Cir. Feb. 13, 2019) (relying on *Evans* and *Gatson*).

Further support is provided by this Court's decision in *United States v. Verwiebe*, 874 F.3d 258 (6th Cir. 2017). In that case, this Court held that, under the elements clause, "[a] defendant uses physical force whenever his volitional act sets into motion a series of events that results in the application of a 'force capable of causing physical pain or injury to another person.'" *Id.* at 261 (quotation omitted). Accordingly, this Court rejected the hypothetical crimes often used to demonstrate how it is possible to cause physical harm without using force capable of causing physical pain or injury. *See, e.g.*, *id.* (discussing poisoning, tripping a person into oncoming traffic, and a sarin gas attack); *Evans*, 699 F.3d at 864 (discussing placing an unconscious person in the middle of the road). This Court unequivocally stated that under its construction of the elements clause, there was "no problem" with such examples. *Verwiebe*, 874 F.3d at 261. To reason otherwise would lead to truly bizarre results. *Id.* ("Creative minds, once unhinged from common sense, might even suggest that pulling the trigger of a gun is not a sufficiently direct use of physical force. Sentencing law does not turn on such fine, reality-defying distinctions.").

Pursuant to this Court's decisions in *Burris*, *Evans*, *Gatson*, and *Verwiebe*, we hold that *threatening to cause* "physical harm" necessarily requires proof that the offender *threatened to use* force capable of causing physical pain or injury because *causing* "physical harm" necessarily requires proof that the offender *used* force capable of causing physical pain or injury. Accordingly,

we hold that § 2919.25(C) is *not* overbroad because it does not criminalize more conduct than the elements clause, and as a result that it *can* qualify as a predicate offense. [5]

## CONCLUSION

For the reasons set forth above, we **AFFIRM** the BIA's removal order.

---

[5] Petitioner also summarily argues that his conviction for domestic violence in violation of § 2919.25(C) does not qualify as a "crime of violence" under 18 U.S.C. § 16(a) because the "threat of force" element has no *mens rea* requirement. Specifically, Petitioner argues that the absence of any *mens rea* requirement means that the default requirement of recklessness applies, *see* Ohio Rev. Code § 2901.21(C)(1), and that crimes that can be committed recklessly cannot qualify as predicate offenses under the elements clause. *See United States v. Portela*, 469 F.3d 496, 499 (6th Cir. 2006). This argument is unpersuasive. The "threat of force" element is simply the means by which an offender must "knowingly" cause a belief in imminent physical harm. Accordingly, the *mens rea* requirement for the "threat of force" element is also knowledge. *See, e.g.*, *City of Toledo v. Lear*, No. L-17-1261 2018 WL 2174378, at *3 (Ohio Ct. App. May 11, 2018) (explaining that the *mens rea* requirement for a violation of § 2919.25(C) is knowledge); *State v. Stewart*, No. 19309 2003 WL 139971, at *2 (Ohio Ct. App. Jan. 17, 2003) (explaining that the *mens rea* requirement for a violation of § 2919.25(C) is knowledge). There is no case law suggesting otherwise.